# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY J. McDANIEL, individually and as assignee of the Estate of Edward Murotani, Decedent,<br><br>    Plaintiff,<br>v.<br><br>GEICO GENERAL INSURANCE COMPANY aka GEICO Insurance Company, and DOES 1-100, inclusive,<br><br>    Defendants. | 1:12-CV-2028 AWI JLT<br><br>ORDER ON DEFENDANT'S 28 U.S.C. § 1404 MOTION TO TRANSFER VENUE<br><br>(Doc. No. 11) |

    This case stems from a fatal car crash in Kern County. Following a jury award against decedent Edward Murotani's estate for over $3 million, Murotani's estate assigned to Plaintiff Amy J. McDaniel ("McDaniel") its rights against Murotani's insurer, Defendant GEICO General Insurance Co. ("GEICO"), regarding a failure to settle within policy limits. McDaniel filed suit in the Kern County Superior Court, and GEICO removed the matter to this Court. The active complaint is the First Amended Complaint ("FAC"), which alleges state law causes of action against GEICO for breach of the covenant of good faith and fair dealing and breach of contract. GEICO now moves under 28 U.S.C. § 1404(a) to transfer this case from the Eastern District of California – Fresno Division ("EDC") to the Southern District of California ("SDC"), located in San Diego. For the reasons that follow, the motion will be denied.

# BACKGROUND

From the First Amended Complaint and GEICO's exhibits, in June 2008, Edward Murotani purchased an automobile insurance policy ("the Policy") from GEICO. The Policy provided third party liability coverage for bodily injury and death, with limits of $100,000 per person and $200,000 maximum per occurrence.

On October 25, 2008, Murotani was driving his car on Highway 58 in Kern County. Murotani drove his car into opposing lanes of traffic and exited his car with assistance as the car caught on fire. The car fire created a large smoke field that obscured traffic and Murotani's car. Steven McDaniel, the husband of Amy McDaniel, was apparently was struck by another vehicle and killed while acting as a Good Samaritan in attempting to put out the car fire.

In March 2009, McDaniel filed suit against Murotani and others in the Kern County Superior Court. Murotani timely tendered defense of the action to GEICO. The only discovery conducted by GEICO was one set of interrogatories dated May 20, 2009.

On August 7, 2009, McDaniel made a written offer on her wrongful death claim for the policy limit of $100,000.

On August 12, 2009, GEICO acknowledged receipt of the settlement offer. GEICO claimed that another driver was responsible for the accident and that Murotani was not driving or even in a vehicle when Steven McDaniel was struck as a pedestrian. After discussions between McDaniel and GEICO, McDaniel's offer to settle remained open until September 6, 2009.

On August 27, 2009, Murotani admitted to facts which placed liability directly on his actions in a sworn deposition testimony.

On October 1, 2009, GEICO offered to settle the suit for $100,000.00, despite knowing that McDaniel's offer had expired nearly one month beforehand.

On March 12, 2010, Murotani died from causes unrelated to the accident. An estate was opened to continue to defend the McDaniel lawsuit.

In August 2011, the parties went to trial. A jury found against Murotani's estate and awarded McDaniel $3,367, 741.00 in damages, plus costs. GEICO continues to deny its responsibility to indemnify Murotani's estate.

In October 2011, Murotani's estate and heirs assigned their claims against GEICO to McDaniel.

On March 14, 2012, GEICO tendered a check for $100,000 to McDaniel. This amount was accepted, but was not accepted as full satisfaction for the $3.4 million jury award.

On May 9, 2012, McDaniel filed suit against GEICO for "bad faith" in the Los Angeles County Superior Court. GEICO responded by filing a motion transfer the matter to the San Diego County Superior Court.

On September 28, 2012, the Los Angeles County Superior Court granted GEICO's motion to transfer. Additionally, the Los Angeles court assessed a monetary sanction of $3,250 against McDaniel's counsel based on a finding that the decision to bring suit in Los Angeles was not made in good faith.

On October 25, 2012, while the Los Angeles lawsuit was still pending, McDaniel filed a lawsuit against GEICO in the Kern County Superior Court. The allegations made against GEICO in the Kern lawsuit are essentially the same as the allegations made in the Los Angeles lawsuit.

On December 7, 2012, the Los Angeles lawsuit was finally transferred to the San Diego County Superior Court. Ten days later, McDaniel dismissed the San Diego lawsuit.

On December 13, 2012, GEICO removed the Kern lawsuit. McDaniel alleges a claim for bad faith and breach of contract, which stem from GEICO's refusal to accept the initial $100,000 policy limits offer and the following $3.4 million verdict against Murotani's estate.

## DEFENDANT'S MOTION

*Defendants' Argument*

GEICO argues that this lawsuit could have been brought in the SDC because GEICO has its principal office in San Diego County, and the Murotani claim was handled by claims representatives in San Diego County. Because the decision making occurred in San Diego County, a substantial portion of the events giving rise to McDaniel's lawsuit occurred in the SDC.

GEICO argues that the factors considered in a 28 U.S.C. § 1404(a) analysis weigh in

favor of a transfer to the SDC. The SDC is more convenient for the parties and witnesses. GEICO's only office in California for claims, sales, service, and underwriting is in Poway, California, and the relevant employees live in either the San Diego or Los Angeles areas. The only other relevant witness is McDaniel's attorney Stephen Nichols, who is in Bakersfield, but as an attorney, his convenience is not considered. McDaniel lives in Seattle, Washington. There are more direct and cheaper flights from Seattle to San Diego than from Seattle to Fresno. McDaniel's choice of forum is given reduced weight because she does not reside in the EDC. Also, given the sanctions imposed by the Los Angeles court and the dismissal of the San Diego court case, it is apparent that McDaniel is attempting to forum shop, which should further reduce the weight given to her choice. The underlying facts relating to Steven McDaniel's death occurred in the EDC, but the events underlying the bad faith claims occurred in the SDC. The claim files and other sources of proof are in the Poway office in the SDC. The cost of litigation in the SDC is less because McDaniel's travel to San Diego is less expensive than traveling to Fresno, and GEICO's travel expenses will be significantly reduced if the matter is transferred. GEICO's contacts with the SDC are more extensive than the EDC because GEICO's decisions in the underlying case emanated from the Poway office. To the extent that there is local interest, it is greater in the SDC because GEICO's Poway office handles all claims within California. Finally, the court congestion and time to trial in the EDC is greater than in the SDC.

*Plaintiff's Opposition*

McDaniel argues that transfer would only be convenient for GEICO and would merely transfer the costs from GEICO to herself. There are witnesses who are in Kern County, including the two Murotani "assignees," four plaintiff's attorneys, and one former plaintiff's attorney. This compares to three GEICO witnesses who live in San Diego County and two GEICO witnesses who live in Los Angeles County. The EDC courthouse in Bakersfield is presumably where many pre-trial matters will be handled, and Poway is only 225 miles from Bakersfield.

As to the remaining factors, McDaniel argues that they do not weigh strongly in favor of a transfer. Although McDaniel is not from the EDC, her choice still is entitled to weight. The facts of the underlying accident and the negotiations and evaluations on behalf of McDaniel all

4

took place in Kern County. That is, half of the claims handling occurred in Kern County. Further, the bulk of McDaniel's files and documents are maintained in paper in Kern County, and GEICO does not explain why the documents stored on computer in Poway cannot be transferred to or read on another computer. GEICO does extensive business in Kern County and throughout California, but neither McDaniel nor Murotani have contacts with the SDC. The local interest favors Kern County because this case involves an accident in Kern County and an insured who lived and suffered acts of bad faith in Kern County. Finally, while the EDC may have greater court congestion, that alone is not a basis for transfer and shifting the inconvenience to McDaniel.

### *Legal Standard*

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This statute partially displaces the common law doctrine of *forum non conveniens*. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, cases by case consideration of convenience and fairness.'" Stewart Organization, Inc. v. RICOH Corp., 487 U.S. 22, 29 (1988).

In order to transfer a case under § 1404(a), the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." See Decker, 805 F.2d at 843. The district court must weigh numerous factors when deciding whether to transfer a case under § 1404(a), including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a

"significant factor" in the court's § 1404(a) analysis . . . [and] the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). The Court should also consider the convenience of parties and witnesses, feasability of consolidation of other claims, local interest in the controversy, and the court congestion of the two forums. See Metz v. United States Life Ins. Co., 674 F.Supp.2d 1141, 1145-46 (C.D. Cal. 2009); Williams v. Bowman, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001)

*Discussion*

There is no dispute that this case "might have been brought" in the SDC. See 28 U.S.C. § 1404(a). It appears that GEICO is subject to personal jurisdiction in the SDC, and, because GEICO's claims and settlement decisions were made in Poway, substantial acts relating to McDaniel's causes of action occurred in the SDC. See 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(2). Therefore, the Court will proceed to examine each of the relevant transfer factors separately.

(1) The location where the relevant agreements were negotiated and executed

The relevant agreement in this case is the Policy sold to Murotani. McDaniel's "bad faith" claims are based on breaches of duties that arose through the Policy. See Archdale v. American Int'l Specialty Lines Ins. Co., 154 Cal.App.4th 449, 466 (2007) (". . . the scope of the duty [to accept reasonable settlements] imposed upon the insurer by the implied covenant of good faith and fair dealing does not turn on whether its breach is characterized as contractual or tortious because, in either case, the duty itself spring from the contractual relationship between the parties."). The parties have not expressly addressed this factor. Nevertheless, a copy of the Policy's declarations page identifies Murotani as the insured and lists his address as being in Bakersfield, i.e. within the EDC. See GEICO Ex. A. This evidence suggests that at least a portion of the negotiations regarding the Policy occurred within the EDC, as it seems unlikely that Murotani traveled to the SDC to obtain the Policy. It is unknown whether Murotani obtained the Policy by calling GEICO directly or by contacting a local insurance broker. In the absence of additional evidence from GEICO on this point, the Court views this factor as weighing against a transfer.

(2) The state that is most familiar with the governing law

McDaniel's suit alleges only California state law claims. Because both the SDC and the EDC regularly apply California law, this is a neutral consideration.

(3) The plaintiff's choice of forum

Generally, a plaintiff's choice of forum is given significant weight. See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); Williams, 157 F.Supp.2d at 1106. However, where the plaintiff does not reside in the chosen forum, his choice is given less weight. Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1168 (10th Cir. 2010); Williams, 157 F.Supp.2d at 1106. Further, "where the forum lacks any significant contact with the activities alleged in the complaint, plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum." Knapp v. Wachovia Corp., 2008 U.S. Dist. LEXIS 41000, *5 (N.D. Cal. May 12, 2008); see also Employers Mut., 618 F.3d at 1168; Williams, 157 F.Supp.2d at 1106.

It is undisputed that McDaniel resides in the State of Washington, apparently in the Seattle area. McDaniel's non-residence within the EDC lessens the significance of her forum choice. However, for the reasons discussed below, there are significant contacts in the EDC that relate to the bad faith claims. Further reducing the weight of McDaniel's choice of forum based on the nature of the contacts within the EDC is unwarranted. Accordingly, while this factor weighs against transfer, it does so on a reduced basis.

(4) The respective parties' contacts with the chosen forum

The contacts that McDaniel has with the EDC are that her husband died, her attorneys reside, and her assigned claims from Murotani's estate originated in the EDC. These contacts are not extensive. GEICO's contacts with the EDC are unclear. GEICO does not dispute that it insures a substantial number of persons within the EDC. If nothing else, it is beyond dispute that GEICO insured Murotani in Bakersfield. Considering that GEICO insured Murotani and defended him in the Kern County Superior Court, the Court finds that this factor weighs slightly against transfer.

(5) The contacts relating to the plaintiff's causes of action in the chosen forum

McDaniel has not disputed GEICO's assertion that the claims handling and the relevant

analyses and decisions occurred in Poway.  These are significant acts with respect to McDaniel's bad faith claims, and they did not occur in the EDC.

However, the alleged bad faith occurred after September 6 when GEICO refused to accept the policy limits offer before the offer expired.  The underlying case was pending in Kern County, the settlement offer originated in Kern County, the settlement offer expired in Kern County, and thus, the alleged breach of the duty to settle occurred in Kern County.  Relatedly, the failure to accept McDaniel's policy limits offer necessitated further litigation and ultimately a jury trial in Kern County.  The result of that trial was a verdict against Murotani that greatly exceeded the Policy's $100,000 limit.  Thus, the damages from GEICO's alleged breaches were felt in Kern County by Murotani.  Finally, the facts of the underlying accident occurred in Kern County, and those facts will be explored as part of the inquiry of whether McDaniel's policy limits offer was reasonable.  See Johansen v. California State Auto Assn. Inter-Ins. Bureau, 15 Cal.3d 9, 15-16 (1975).  Because Kern County is within the EDC, these are significant contacts.

McDaniel's claims are for the breach of the duty to accept a reasonable policy limits settlement offer.  See id. at 15-17; Archdale, 154 Cal.App.4th at 464-65; Rappaport-Scott v. Insurance Exch. of the Auto. Club, 146 Cal.App.4th 831, 836 (2007).  GEICO's focus on its decisions and analyses in Poway is understandable because the reasonableness of McDaniel's offer includes consideration of what GEICO knew or should have known about the accident and Murotani's liability.  See Isaacson v. California Ins. Guarantee Assn., 44 Cal.3d 775, 793 (1988); Judicial Council of California, Civil Jury Instructions ("CACI") § 2334.  However, the Court cannot overlook the facts that the duty was ultimately breached, the damages were felt, and the accident occurred, all in the EDC.

Accordingly, the Court finds that the SDC and the EDC both have significant contacts relating to McDaniel's bad faith claims.  This is a neutral factor.

### (6)  Relative court congestion

The EDC has a more congested docket.  GEICO has attached statistics from the Administrative Office of the United States Courts.  See GEICO Exs. M, N.  The data indicates that, as of September 30, 2012, there were 8,564 cases pending in the EDC and 6,252 cases

pending in the SDC. See Ex. N.[1] Each judge in the EDC had an average pending case load of 1,427 cases, while each judge in the SDC had an average pending case load of 481 cases. See id. Finally, the median time from the filing of a complaint to trial in the EDC is 47.2 months, compared to 34.8 months in the SDC. See id. These statistics reflect that the EDC is one of the most congested districts in the country. This factors weighs in favor of transfer.

### (7) Convenience of Witnesses

To show inconvenience to witnesses, the moving party should state the witnesses's identities, locations, content, and relevance of their testimony. See In re Ferrero Litig., 768 F.Supp.2d 1074, 1080 (S.D. Cal. 2011); Florens Container v. Cho Yang Shipping, 245 F.Supp.2d 1086, 1092-93 (N.D. Cal. 2002). It is "the convenience of non-party witnesses, rather than that of employee witnesses . . . that is the more important factor and is accorded greater weight." Gundle v. Fireman's Fund Insurance Co., 844 F.Supp. 1163, 1166 (S.D. Tex. 1994). Similarly, the convenience of "key witnesses" is accorded greater weight than the convenience of "non-key witnesses." Mid-Continent Cas. Co. v. Petroleum Solutions, Inc., 629 F.Supp.2d 759, 763 (S.D. Tex. 2009); see Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005).

GEICO has identified 5 witnesses: Aldin Buenaventura, Denise Lindgren, David Fetchina, Laura Ward, and Michael Griott. Aldin Buenaventura is a GEICO employee who works in the Poway office, and was the primary claims adjuster in the underlying lawsuit. See Webster Dec. ¶ 11; Hansen Dec. ¶ 11. As the primary claims adjuster, Buenaventura would be familiar with the information in GEICO's possession about the accident, would have information from Murotani, would have information regarding investigative activities, and likely would have made initial decisions regarding the claim. It is unknown precisely what decisions Buenaventura made, but Buenaventura did sign the August 12, 2009, letter that acknowledge receipt of McDaniel's offer and that contended that Murotani was not in his vehicle when Stephen McDaniel was killed. See FAC Ex. 3. Denise Lindgren is also a GEICO employee who works in GEICO's Poway office, and is Buenaventura's direct supervisor. See Webster Dec. ¶ 12;

---

[1] The Court has relied on Administrative Office statistics in prior § 1404(a) cases. See Gill v. Simpson, 2012 U.S. Dist. LEXIS 147348, *18-*19 (E.D. Cal. Oct. 12, 2012).

Hansen Dec. ¶ 11.  As Buenaventura's direct supervisor, it can be assumed that Lindgren would have reviewed Buenaventura's work, opinions, and analyses regarding Murotani's case.  It is also likely that Lindgren would have directed Buenaventura's actions and provided independent analysis of the case.  However, it is unknown precisely what decisions Lindgren made, and it is unknown whether Lindgren would have had anything to do with McDaniel's settlement offer.  David Fetchina is also a GEICO employee who works in GEICO's Poway office, and is Lindgren's direct supervisor.  See Webster Dec. ¶ 13; Hansen Dec. ¶ 11.  It is likely that Fetchina's actions and involvement with the case are similar to Lindgren's.  Further, Fetchina appears to be the highest ranking GEICO employee who was involved in the underlying case, and as such, is more likely to have had made the decision on McDaniel's settlement offer.  However, like Lindgren, it is unknown precisely what decisions Fetchina made or what role Fetchina had with respect to the policy limits offer.  Laura Ward is a GEICO field adjuster who lives in Los Angeles County.  See Hansen Dec. ¶¶ 13, 14.  Ward attended a July 2010 mandatory settlement conference in the Kern County case against Murotani.  See id.  It is unknown whether Ward investigated the accident, collected information from Murotani, or did anything other attend the settlement conference.  Finally, Michael Griott is a GEICO attorney who was appointed by GEICO to defend Murotani and Murotani's estate.  See Hansen Dec. ¶ 12.  Griott had communications with McDaniel's primary counsel Steve Nichols on many topics, including discussion relating to McDaniel's policy limits offer.  See id.  It can be assumed that Griott relayed the policy limits offer to GEICO and also provided some form of analysis to GEICO.  Griott lives in Los Angeles County.  See id. at ¶ 14.

      McDaniel has identified seven witnesses: Steve Nichols, Michael Young, Thomas Brill, Brandon Holladay, Todd Gall, Susan Murotani, and Leland Murotani.  Steve Nichols and Thomas Brill are the attorneys of record in this case, and were the primary attorneys in the Murotani case.  See Nichols Dec. ¶ 3.  Nichols appears to have been the most active in the Murotani case, as he sent the policy limits offer and discussed the matter with Griott.  Brill filed the opposition to this pending motion, but it is unknown what he did in the Murotani case.  Michael Young and Brandon Holladay are attorney's at Nichols's firm who "may be called as

witnesses." See id. However, it is unknown what involvement or what relevant information they possess. Todd Gall is a former attorney at Nichols's firm who "was involved in the events giving rise to this lawsuit." Id. Like Young and Brandon, it is unknown how Gall was involved or what relevant information he may possess. Susan and Leland Murotani appear to be relatives of Edward Murotani, and they signed an agreement that granted McDaniel a lien on any recovery that might be achieved against GEICO and certified that Edward Murotani's estate was worth approximately $65,000.00. See FAC Ex. 9. It is unknown what relevant information these individuals possess.

     Both parties have provided relatively little description of the relevant information possessed by the identified witnesses. Of the witnesses identified by McDaniel, Steve Nichols appears to possess the most relevant information because the FAC's exhibits confirm that he was directly involved in communications about the policy limits offer. See FAC Exs. 2, 3, 4, 7, 8. Nichols's communications and representations will be relevant to assessing whether McDaniel's offer was "reasonable." See Johansen, 15 Cal.3d at 15-17. However, typically the convenience of a party's counsel is not considered as part of the 28 U.S.C. § 1404(a) analysis. See In re Volkswagen AG, 371 F.3d 201, 206 (5th Cir. 2004); Cincinnati Ins. Co. v. O'Leary Paint Co., 676 F.Supp.2d 623, 633 (W.D. Mich. 2009). Although the parties appear to agree that Nichols has evidence as a fact witness, he is also an attorney of record and is prosecuting this case. If this case proceeds to trial, Nichols will be present for each court day, irrespective of whether he is a fact witness on any particular day. While there may be some additional inconvenience to Nichols due to his status as a fact witness, that additional inconvenience will be given very little weight. Cf. id. Beyond Nichols, the Court can make no assessment as to what evidence McDaniel's identified witnesses actually possess or how relevant their evidence may be. In contrast, the Court has a better sense of what evidence Buenaventura, Lindgren, Fetchina, and Griott possess, as well as the relevance of their evidence. In general, these witnesses will be able to discuss the information GEICO possessed, the nature of GEICO's investigation, and GEICO's analysis of the policy limits offer. See Isaacson, 44 Cal.3d at 793; Johansen, 15 Cal.3d at 15-17; CACI § 2334. However, since these witnesses are all employees of GEICO, the weight of their

inconvenience is reduced.  See Gundle, 844 F.Supp. at 1166.

In light of the above, the Court concludes that this factor weighs in favor of transfer.

### (8)  The Availability Of Compulsory Process To Compel Attendance of Unwilling Non-Party Witnesses

The only non-party witnesses identified by the parties reside in California.  Through operation of Federal Rule of Civil Procedure 45(b)(2)(C), and California Code of Civil Procedure § 1989, the federal courts in California have the power to subpoena witnesses throughout all of California.  See Brackett v. Hilton Hotels Corp., 619 F.Supp.2d 810, 821 (N.D. Cal. 2008).  Therefore, every identified potential witness is within the subpoena power of both the EDC and the SDC.  See id.  This is a neutral factor.

### (9) The ease of access to sources of proof

McDaniel's counsel indicates that its files are located in Kern County, and that almost all of the file is maintained in paper only.  See Nichols Dec. ¶ 6.  However, McDaniel's counsel has not indicate whether the file is voluminous.

GEICO has indicated that its files are mostly electronic and partially paper.  See Webster Dec. ¶ 2.  The paper documents are kept in San Diego County, and the electronic file is only accessible through the GEICO computer system.  See id.  The GEICO computer system is best accessed through computers in the Poway office.  See id.  However, GEICO does not indicate how voluminous its paper and electronic files are, nor does GEICO discuss the ability to transfer its electronic data to other locations.

The parties have provided limited information on this factor.  Although more specifics may have been helpful, the Court concludes that the more significant documents are likely those of GEICO in the SDC.  Accordingly, this factor weighs in favor of a transfer.

### (10) Convenience of the Parties

McDaniel resides in Seattle, Washington.  According to Rand McNally and Mapquest, Fresno is approximately 920 miles from Seattle, and San Diego is approximately 1,250 miles from Seattle.[2]  Thus, Fresno is the closer and more convenient forum for McDaniel.

---

[2]GEICO has submitted evidence from Mapquest.  See Hansen Dec. ¶ 16.

GEICO argues that San Diego is more convenient to McDaniel based on a Travelocity webpage that shows, from Seattle, it costs less and takes less time to fly to San Diego than it does to Fresno.  See GEICO Ex. L.  The Court is not convinced.  First, GEICO's argument ignores McDaniel's choice of forum, which reflects an assessment of McDaniel's own convenience and is consistent with the mileage involved.  Second, the Travelocity webpage lists non-direct flights from United Airlines.  However, Alaska Airlines offers two direct flights between Seattle and Fresno, the flights last just over two hours, and the roughly $50 price differential between the Fresno and Seattle flights is insubstantial.[3]  Thus, the Travelocity website does not accurately reflect flight options to and from Fresno.  Third, McDaniel is not required to travel by airplane, and land travel between Seattle and Fresno is 300 miles closer than San Diego.

GEICO's only office for processing claims, underwriting, service and sales in California is in Poway.  See Webster Dec. ¶ 9.  Further, as indicated above, the relevant GEICO employees reside either in the SDC or are closer to San Diego than they are to Fresno.  Neither GEICO nor McDaniel has presented evidence that GEICO maintains a physical presence in the EDC or employs individuals who live in the EDC.  However, Alaska Airlines has direct flights from San Diego to Fresno, and the flights last about 1 hour and 15 minutes.[4]  Although the air travel between Fresno and San Diego is relatively quick, the Court concludes that SDC is the more convenient venue for GEICO.

In light of the above, the Court concludes that Fresno is the more convenient forum for McDaniel and San Diego is the more convenient forum for GEICO.  This is a neutral factor.

### (11) Costs of litigation in the two forums

GEICO focuses on costs of travel to the SDC and the EDC.  The costs to McDaniel in terms of air fare are essentially the same in the EDC and the SDC.  The costs to GEICO is

---

[3] The Court takes judicial notice of the Fresno Yosemite International Airport website (http://www.flyfresno.com) that shows direct flights from Seattle, and the Alaska Airlines website which also shows two direct flights to Fresno (https://www.alaskaair.com/Shopping/Flights/ScheduleShoulder/04).  Of note, the Alaska Airlines website shows two direct flights, that cost $136.90 per flight (depart and return), and that last between 2 hours 22 minutes and 2 hours 6 minutes.  See id.  This evidence is comparable to the Travelocity webpage submitted by GEICO, and it is evidence that is not subject to reasonable dispute.  See Fed. R. Evid. 201.

[4] The Alaska Airlines and Fresno Yosemite International Airport websites confirm these flights.

increased in the EDC because GEICO will have to pay for food and lodging of a corporate representative and the 5 witnesses identified above. It is true that the witnesses identified by McDaniel would have to pay for food and lodging in San Diego if the case was transferred to the SDC, but the Court cannot ascertain the relevance of the those witnesses' testimony. In the absence of additional explanation from McDaniel, this factor weighs in favor of transfer.

### (12) Forum Selection Clause

This is a neutral factor because there is no forum selection clause in this case.

### (13) Public Policy Considerations/Local Interest In The Controversy

The only arguable local interest that the SDC might have in this case is that GEICO's claims center for the entire state of California is located in Poway. However, this case is one of the presumably thousands of cases that run through the Poway office. As far as the Court can tell, there is nothing about this case that would interest San Diego County/SDC.

The local interest in EDC is more evident. This case involves an insured who lived in Kern County, an accident and a death that occurred in Kern County, a jury trial that occurred in Kern County, and a breach of the duty of good faith by GEICO in Kern County against a Kern County resident. It is true that a Washington state resident now owns the bad faith claims that belonged to Murotani's estate. Nevertheless, the basis of the cause of action involved conduct in Kern County and conduct against a Kern County resident.

The Court concludes that the EDC/Kern County's interest in this case is greater than the SDC/San Diego County's interest. This factor weighs against transfer.

*Resolution*

As concluded above, factors 2, 5, 8, 10, and 12 are neutral, factors 6, 7, 9, and 11 weigh in favor of a transfer to the SDC, and factors 1, 3, 4, and 13 weigh against a transfer. Some of the considerations weigh either for or against transfer in a somewhat diminished capacity. Nevertheless, the end result is that the various factors are evenly distributed. It is GEICO's burden to make a "strong showing" in favor of a transfer. See Decker, 805 F.2d at 843. Although not all factors are equal in weight, this kind of distribution is not a sufficiently "strong showing." Therefore, the Court will deny GEICO's motion to transfer this case to the SDC.

**DOCKET CORRECTION**

The parties entered into a stipulation for McDaniel to file an amended complaint. See Doc. No. 10. One of the purposes of the stipulation was to correct GEICO's name. See id. GEICO was originally sued under the erroneous name "Government Employees Insurance Company," instead of its proper name "GEICO General Insurance Company." The FAC dropped "Government Employees Insurance Company" as a party, which constitutes a dismissal. See Jones v. TW & Co., 2011 U.S. Dist. LEXIS 102522, *5 n.1 (E.D. Cal. Sept. 12, 2011); see also Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1546 (9th Cir. 1987). However, the docket continues to identify "Government Employees Insurance Company" as an active party. The Court will order the docket to reflect that "Government Employees Insurance Company" was terminated on February 7, 2013, due to its omission as a party from the FAC.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to transfer venue under 28 U.S.C. § 1404(a) is DENIED;
2. Defendant may file an answer or other responsive motion or pleading to the First Amended Complaint within twenty (20) days of service of this order; and
3. The Clerk shall correct the docket to reflect that "Government Employees Insurance Company" was terminated as a party on February 7, 2013.

IT IS SO ORDERED.

Dated:   April 25, 2013

SENIOR DISTRICT JUDGE